The next call for argument, the case of Markavich versus Board of Trustees of Temple, and I'll Good morning, your honors. May it please the court, my name is Brian Failing, sitting with me at the council table. This is my colleague Michael DiPrimo. We represent Michael Markavich, the appellant in this matter. I would like to request from the court three minutes of rebuttal time. I'll proceed immediately to the court's letter to council that we address the question, if in fact a violation of 28 U.S.C. section 455A did occur, what standard of review applies to the district court's trial rulings on other issues? And if I might immediately, I would like to address that by going to a 1993 case out of the 5th Circuit Court of Appeals, the Continental Airlines and the In-Ray Continental Airlines, because I think they actually directly answer the court's query to council. This arose out of a bankruptcy case, but the statute at issue was 455A. The standard, one of the standards that they're addressing is abuse of discretion, and how a finding of a violation of 455A is affected by an abuse of discretion review is contrasted, for instance, with a plenary review by the court. In that case, the court said this. With respect to the first factor, the court concluded, I'm sorry, the standard of review which you review in court must utilize in ruling on a bankruptcy court's estimation of the value of an unliquidated claim, that is, whether the bankruptcy court's estimation constituted an abuse of discretion, demands a different result when considering the issue of whether section 455A violation constitutes harmless error. The risk of injustice to the parties is much greater when a court lacks broad powers of review. In this instance, we do not vacate the bankruptcy court's order. If we do not vacate the bankruptcy court's order estimating the pilot's claims at zero and remand the estimation issue to the district court, the parties may remain subject to an yet has not abused his discretion in entering the order. Additionally, the risk of undermining the public's confidence in the judicial process also is greater in this instance than the risk posed when dealing with summary judgment review. In that particular case, just to fill in the details a little bit, there had been an earlier case in Rayconnell Airlines, again in 1990, where the district court judge was found to have violated 455A. However, everything before the Fifth Circuit Court of Appeals at that time was subject to plenary review, and the court said, look, we can have the same opportunity the district court judge had in order to examine these matters, and therefore there's no need to send it back or to vacate or have vacature of the rulings. Mr. Failing, let me shift the focus for a moment from the standard of review question because that is actually a rather unique issue given the presence of the 455A issue in the other trial court rulings. But speaking only for myself, I'd like to focus on the recusal issue and your recusal motion, and I want to make sure I understand what it says. Am I correct in my reading of your recusal motion that even if lead defense counsel at trial had not presented Judge Tucker with an award, that Judge Tucker still should have recused herself because they are both, that is she and lead counsel, both members of the Barristers Association? No, Your Honor, not at all. I know in our appendix we've submitted our motion, and we were very careful to characterize the issue as this. So does the whole matter come down to the issue of the award? Your Honor, not at all. That was a part of our motion, but we thought the larger part, although we considered that in conjunction with initially there was the problem that we saw of the lower court judge receiving an award twice from Temple University, the Black Law Students Association, and being honored, which is a good thing. And of course you're always feeling a little awkward when you say, well... I understand. Again, speaking only for myself, I'm trying to unpack this issue and your position on this issue because, frankly, I'm not impressed by their dual membership in this organization. No, no. Nor am I, Your Honor. And you've indicated that you were careful in your motion, but there was one statement in that, in the recusal motion. The Barristers Association membership is neither broad-based nor racially diverse. Her Honor, too, is a member of the Barristers Association and last year served on its advisory board. So it seemed to me that you were trying to draw that whole cross-membership or joint-membership issue into the question when, again, my view only what really ought to have been at stake here for you was the fact of her receipt of an award presented by counsel in the case at a time when the case was pending. And language like this seemed to me to at least confuse it and perhaps introduce the unfortunate racial issue that then prevailed ultimately in the court's disposition. Your Honor, look, I had no idea. The reason I'm going to tell you why that was, you know, as an advocate, we want to develop every aspect of our motion, for instance, with the receipt of awards during the pendency litigation without disclosing that to counsel. With respect to the receipt of the award from League Counsel for a defendant during that same time period, the nature of an organization is important for this reason. Again, this was not a dispositive. But if the organization is collegial, for instance, if it's Irish-American, if it's people with blue eyes, it tends to narrow, if you will, somewhat the associational ties and it makes it more collegial. Of course, it's not dispositive. We're sure it does, but the problem here is your narrowing brought it down into a question of race, didn't it? I didn't, Your Honor, no, because if it had been a men's organization or a women's organization or an organization of former law clerks, the reason we identified that, I mean, I'm in the unfortunate position now of suffering, with all due respect to the lower court, an indignity unlike I've ever suffered in my prior professional life because, as an advocate, I was trying to identify the court, that there are factors here that aren't dispositive, but it's one evidentiary brick, if you will, in our overall position that there's an appearance of improperity. I agree with you completely that the characterization that occurred is certainly a mark on your record, so to speak, that no counsel would want to have, but let me ask you this. What in your motion or anywhere else in the record relative to the recusal motion, is there language or a suggestion by you or your side that race or the race of the judge or the race of the judge, at least in the defense counsel, had some basis for your motion other than that one statement in the motion that I cited? Your Honor, there is not. I would note that, again, with all due respect to the lower court judge, there wasn't one iota of information that she pointed to or something in the record that would have suggested that, nor with defense counsel. Your Honor, frankly, there was nothing in the record. I frankly, though we butted heads at times, found Mr. Tucker remarkably winsome. And when his response, which triggered all of this, came out, this is not the time for catharsis. I was devastated. I have never had something like that directed at me before. Well, Lee Counsel for the Defense pretty much prompted the response by the judge. He raised this issue in his own papers. And he can speak to that when it's his turn. I understand, Your Honor. And that's why I pointed to our motion. And I understand the court's concerns now in that. I just didn't, you know, it was the totality of the package. Our real emphasis at the court, and we'll look at our motion again, was the receipt of awards during the pendency of litigation without disclosing that to us. And the hypothetical we gave was if she were presiding over a case with GM, for instance, and received awards from GM during the pendency of litigation and from Lee Defense Counsel for GM during the pendency of the litigation with us and didn't disclose that, the appearance of impartiality is there. We never deign to say it's subjectively true because I don't know the heart or mind of the judge, but I object. Judge Tucker questioned the timing of your recusal motion. I understand that, Your Honor. That you filed the recusal motion at a time after you had received an unfavorable discovery order, whereas you should have, you had known of this information all along. Do you want to comment on that? Yeah. I would say that that's categorically wrong. We had not learned about it until we had been doing an internet search. And we'll often do that on judges. Not immediately, but we'll just try to find out if there's anything out there. We did with this court that might be helpful for us in appearing before them. We did that, I think, about two weeks before this recusal motion. We note that in our motion when it did arise. We simply did not know. We're from out of state. Our client is not privy to what goes on in the bar in the state of Pennsylvania. How long had the case been pending prior to the time your recusal motion was filed? We had filed, Your Honor, in October of 2000, and I believe our recusal motion came in the fall of 2001. And if I can... And these awards all came during the interim? Your Honor, they were split out between 2001, I believe, or 2002 and early 2003, in that time frame. Or 2001 to 2002. And for us, again, it was simply the appearance. The concern we had was that it certainly does present, in our estimation, poorly for us to be sitting in front of a judge who has been a recipient of awards such as this by our opposition in the case over which she will be making important decisions. Judge Dowd, I want to give you an opportunity to get in here from a distance. Well, I'm still interested in the substantive claims made by the appellants to wit that the testimony of the expert was improper, and that also there was a denial of the plaintiff's opportunity to present the doctors who examined Markavich shortly after his trip while handcuffed to check on his mental status. I'd like to focus on that to the extent that the plaintiff's counsel wishes to address it. Thank you, Your Honor, I would. Our position from the beginning is and remains that the Section 302 standard is objective. There's a form that one has at the hospital for either law enforcement or other laymen to look at, and it has boxes to check, and you have to The line is off, Your Honor. I apologize. I'll stop there. Did you file a Daubert motion as to the testimony of the defense expert? I'm sorry, what's your motion? No, a Daubert motion. Did you challenge the testimony? No, we did not. Judge Dowd's French is much better than mine. Our position was, and we didn't think there was an open question here, that the question of the standard for 302 was one of a matter of law. It was objectively set forth on a form. The legislative intent Well, I've got that, but I'm still focused on the trial court's responsibility with respect to expert testimony. Were you given notice that you were going to be confronted with the expert testimony of Rothenstein? We were, but we weren't sure of the scope of that testimony initially. You didn't get a report? Well, we did get a report from the expert in this particular case, yes. Go ahead, Judge Dowd. Well, you didn't challenge that prior to the testimony as to whether that expert should be allowed to offer an opinion. We did, but not through the Daubert motion, Your Honor. We did challenge the basis for the testimony of the expert in this particular case. You were effectively raising a 704 issue before the district court, weren't you? Yes, from the moment we became... An ultimate issue question. That's correct. The ultimate issue and also the question of utilizing an expert, and this is why we didn't do the Daubert route, is because they were utilizing an expert to tell the court what the law was, when in fact the law was clearly set forth in the Pennsylvania statutes as to what was required to determine a person. A person is sufficiently, severely mentally disabled to warrant an involuntary commitment effort. Mr. Failing, in the end, will you please tell me where in the trial record the issue you raised is implicated in any way other than the question asked by counsel, which included a reference to Section 302. That is, the question that was asked, are you able to give us an opinion within a reasonable degree of psychological certainty as to whether or not Carl Bittenbender had reasonable grounds to believe that Michael Markavich was severely mentally disabled and in need of treatment, and then, pursuant to Section 302 of the Mental Health Procedure Act, you objected, it was overruled, and the answer was yes, absolutely. Isn't that all you're complaining about here? Isn't that the only testimony that comes out that suggests a legal conclusion offered by the expert? Well, there is the presence of the expert bolstering, if you will. She added to her testimony that she believed that the Bittenbender report was true. So there's the additional problem of her bolstering the testimony. How and where did she say that? Because I've read that testimony, and I'd like you to refer to it in the record. Your Honor, I don't have that citation. You're suggesting that somehow she was vouching for the credibility of the witnesses. Yes, Your Honor, I am. The other fellow. And then I cite to the, I can find this quickly at the program in one second, I cite to the AC counsel case where something similar happened out of the Fourth Circuit. Or A.S. counsel, I'm sorry. Directly to page 55 of our... I want to know where in the trial record this testimony was offered that you're complaining about. My memo indicates that this took place essentially at page 182 of the appendix. Thank you, Your Honor. I haven't found where in my brief. I thought it was under the A.S. counsel site. Well, why don't we address that in, you find it, and when you come back with rebuttal, point me to it. But I'm trying to find it, and I looked at it before, and my recollection, quite frankly, is you didn't object to the answer that was given. But hopefully we can locate that. Thank you. And we will have you back on rebuttal, of course, in a moment. Thank you. So we'll turn now to counsel. Good morning. May it please the court. Joe Tucker on behalf of all the defendants. On the very narrow question posed by the court of Temple University's position on what standard this court should take if it concludes that a 455 harmless error occurred, a failure to comply with the trial rulings the court should take, the traditional non-plenary review. And before we get to that, I think some background needs to get into the recusal issue, because I would be remiss if I did not argue that I do not believe that Judge Tucker should have recused herself. As the court is aware, this action was originally filed in October of 2000. In March of 2001, Judge Tucker, being the first female black ever elevated to the district court, there was great fanfare within the Philadelphia legal community and great pride taken by Temple University Law School. Two student organizations, not the law school nor Temple University, two student organizations, the Women's Law Caucus and the Black Law Student Association, honored Judge Tucker in March and April of 2001. All of that is in the record, Mr. Tucker, and we've seen that all. But what's not in the record, which needs to be made clear, Mr. Failing keeps quoting from a Legal Intelligencer newspaper article where I gave an interview when asked why Judge Tucker, amongst three other people, was receiving this award. I made no statements at a banquet or anything. As a matter of fact, the actual award was given by Audrey Talley, then Chancellor Elect of the Bar Association. He quotes from a Legal Intelligencer article wherein I'm quoted as saying that Judge Tucker has been a friend of the Barrister's Association, has been the ear to the Barrister's Association. There's no evidence that I was on the committee that selected Judge Tucker when I physically gave her the Barrister's Association. What was your position with the Barrister's Association? I was the president of the Barrister's Association at the time, and as president, the Legal Intelligencer called me for an interview as to why these individuals... Well, that was during dependency of this case, though, was it not? Without question. And then in July of 2002, they filed a motion to refuse, which was denied. And then in November of 2002, they filed a petition for writ of mandamus, which was denied by this court. I mean, it's reasonable... All right, Mr. Tucker, let me... Having focused on this with your adversaries, let me cut to the chase here with you, because you are really the one who raised the race issue in the papers in the motion, did you not? To me, the race issue... Just yes or no? No, it was raised by plaintiff's counsel in his papers. Oh, I understand your position. That anticipates what I wanted to ask you, and that is, what in his papers suggested that race was an issue? The counsel suggested that Judge Tucker's marriage association with the Barrister's Association in his papers, as well as the way he described the Barrister's Association, was somehow some type of racially exclusionary organization that somehow did not accept members who were not African American or not black. I think as Judge Tucker pointed out in her opinion, that is not the Barrister's Association. The Barrister's Association does promote the interest of lawyers of color within the city of Philadelphia, and has done for quite some time. For him to go to great lengths... A single averment is found at page 46 of the appendix, where he refers to the organization being neither broad-based nor racially diverse. And it's there. But what I want to know is, beyond that single averment, is there anything else in this record, whether it's in the papers or whether it was by way of argument at any point prior to the motion for recusal and during the pendency of the motion for recusal, that suggests race is an issue in this case or for purposes of recusal? I had never felt that race was an issue, nor my association with the Barrister's or Judge Tucker's association with the Barrister's, until it was raised by plaintiffs' counsel. And is this single averment the only reference at all that occurs in the record that you believe gives a basis for race having been raised by counsel? The single averment and the argument made thereof from that averment. I submit to the court, as I argue, that that argument is specious at best, because that argument would not be true of members of the Breehan Society, the Justinian Society, many other ethnic organizations. To single out Judge Tucker and my association with us somehow being a racially exclusionary organization, my perception of that was that it was specifically based upon race and no other basis. And I argue that in my motion, that race had nothing to do with it. And for him to raise that because she was a member of an organization that I happened to be a member of, an African-American organization, harken back to days that this court had long since gone back, since Judge Higginbotham had talked about it quite some time ago. You move to Judge Higginbotham's language, and what bothers me with the decision in this case, and that's what we're reviewing, is the decision of Judge Tucker not to recuse, is her language in Part C of her memorandum of order that said, I'm heartened by the example of such distinguished jurists as the late Judge Higginbotham, and yet saddened by the fact that almost three decades later, a race-based tactic such as the one present is still employed. That concerns me. Now, you can conclude, or you can argue what you want to argue in your with the court's conclusion that the motion was race-based, because at that point, I don't know how an objective observer, and that's really what the test of 455 is, how an objective observer can believe that as this trial continues, that the court does not harbor at least some bias or prejudice against the plaintiff and the plaintiff's counsel. Let me go then to the 455A standard, that assuming the court, as posed by its question, concludes that harmless error occurred in Judge Tucker's failure to recuse, it is our position that the court should use the non-plenary review standard in her trial rulings. I believe a pragmatic approach has to be taken to 455A, because understanding 455A deals with perception and not the actual reality. I think two cases have touched upon this issue. One case is U.S. v. Jordan out of the Fifth Circuit, which is 49 F. 3rd 152. The other is U.S. v. Pearson out of the Tenth Circuit, which is 203 F. 3rd 1243. In U.S. v. Jordan, the court actually confirmed a conviction of a criminal defendant, but in the appeals court affirmative, it remanded back for sentencing because it said the trial judge, who under 455A otherwise should have recused himself, could not do the sentencing portion, but could do the actual trial. I think if you look at Lynchburg, which is the case that starts this whole 455A analysis, all those cases that follow Lynchburg talk about issues where the court has been both fact-finding or has issued rulings, and it has said that when dealing with those, then we have to be concerned about whether or not it has happened. But when the trial rulings have happened, the courts that have looked at these issues have allowed the trial rulings to be ruled under the non-plenary standard. In Pearson, the Tenth Circuit reviewed the judge's rulings on a non-plenary standard where it was alleged that the judge was part of a scheme by the assistant U.S. attorney of a selection scheme that they said that the... It was contended that the U.S. attorney on the Tenth Circuit had this scheme for selecting judges. And the Tenth Circuit, in looking at that, said, What we will look at in looking at this judge's decisions is under a non-plenary standard. This court, the U.S. Supreme Court, actually, arising some 160 years ago, 167 years ago in a case coming out of this district, a case by the name of Philadelphia v. Stimpson, 39 U.S. 448, has long recognized a trial court judge's ability to make those trial court evidentiary rulings and has used an abusive discretion standard, the non-plenary standard. I need to answer Judge Dowd's question, though, about the expert. I think it's important, Judge Dowd, that you understand that Plaintiff also had an expert witness. Excuse me. Let's not leave the other issue quite yet and turn to the evidentiary issue. Because I think Judge Fisher has very well focused this whole recusal issue. And I will go so far as to say, speaking, again, only for myself, I don't think Judge Tucker was required to recuse. That's my belief. I don't think that the suggestions here rose to a basis that required her to recuse. That having been said, I think there is a very, very meritorious issue here that suggests that maybe she did violate the impartiality requirement of 455A in her written ruling relative to the race issue. And this is why I've been asking you. You have the benefit of having been trial counsel, reading this record, and I have spent a lot of time with it. I cannot find, other than that one averment, a suggestion that race was an issue in this case. Now, let me get finally to the legal point. If that's true, assuming we found a 455A violation based on her adjudication of that issue, what about the Supreme Court's Liljeburg ruling and its impact upon or its teaching as to how we should handle this possible 455A violation? Let me answer your question first by saying I will only go by what's in the record when talking about those issues that deal with race, and I'm only bound by those records. I have my own personal observations that I couldn't make, but those are why I'm moving to the court. What Liljeburg talked about was Liljeburg went through a three-step analysis and said in certain instances a 455A failure to recuse can be a harmless error standard. And the only way that this court can apply the plenary standards to in fact conclude that the trial court's recusal decision was not harmless error, but whether the trial court's decision to not recuse itself was biased. And if the court makes that, it's saying that we've done the Liljeburg analysis, the three-step analysis, and we're saying, okay, trial court, you should have recused yourself. And on those issues, and I still submit even if the court goes through that and says it goes through the Liljeburg standard, on the plenary issues, the court still retains its same standard of review on the motion for summary judgment, on the motion to dismiss. On those evidentiary and trial issues, I submit that it does not serve the public good, which is what 455A is about, the public perception. It does not serve the public perception to have a full two-and-a-half-week trial and find no errors in the case, but say go back and retry the case because the judge may have been biased. You've answered my question, and I do want to give Judge Dowd an opportunity, as well as you, an opportunity to respond as you had begun to do to one of Judge Dowd's inquiries. Judge Dowd, you had asked about the expert witness issue. There were no Daubert motions filed. What there were were the exchange of expert reports and expert depositions of both plaintiff's experts and defendant's experts. At trial, though, the plaintiff did not call their expert witness, who was going to testify, of course, to the contrary of what a defendant's expert had testified to. So there was no surprise in what Dr. Rosenstein was going to say because it was outlined in her report, which was given to counsel several months, I think a year and a half before trial, and depositions were taken shortly after that. So plaintiff's counsel had quite some time to chew over Dr. Rosenstein's testimony, as well as her expert witness report. I want to turn it back to the 455A issue. Before you leave that, was there an objection to the offering of an opinion by your expert? There were objections at various times of certain things she said as noted in the record. And how does her testimony come within the rubric of expert testimony? Her testimony comes within the rubric of expert testimony because it was helpful to the jury. It was an issue that was novel and unique, the whole whether or not someone is severely mentally disabled and what someone at a college and specifically dealt with at a college and university. Did she examine this person, the plaintiff, to determine whether he was disabled on the day of the event? No, nor did she say he was disabled on the day of the event. What she did say, though, that on a college and university campus, under the facts and circumstances presented through deposition testimony and trial testimony, it was reasonable to have him examined. And that's all the 302 does. It has someone transported for examination. So she testified that she believed the testimony of the Temple University employees? No, she didn't testify to that. She said based upon the testimony of both the plaintiff as well as a psychologist. Because a psychologist saw a plaintiff on the day, a therapist saw a plaintiff on the day he was transferred, before he was transferred to the emergency room. There was a therapist brought over from the University Counseling Service who also examined the plaintiff. She said based upon these, that in a university setting, it is reasonable for a university officer to have an individual examined under these circumstances. Thank you. Again, just finishing up on the 455A analysis, if I may have one more moment together. Very quickly, if you would, please. There is no indication nor is there any argument from Plaintiff's Counsel also as we deal with the recusal issue that any of Judge Tucker's traditionally non-plenary review issues, that is the admission or the exclusion of the doctor's medical records or the doctor's testimony or Dr. Rosenstein's, was in any way biased whatsoever. He just says they're wrong. Yeah. What I think the court is setting up in a 455A analysis, if it does a plenary review, is to now stand as a super trial court every time this issue, every time a Lidgerberg harmless error standard has been accomplished. I understand your position, Mr. Tucker. Thank you very much. Mr. Poehling, having you back on rebuttal, let me refer you to A836, page A836. That's Joint Appendix Volume 3. This is what I was looking for and I don't know why I was not able to find it. It would be page 161 of the trial transcript. And this is where cross-examination begins of Dr. Rosenstein. According to your report you reviewed, I count, 18 depositions. Does that sound about right to you? Yes, it does. Some of them long, some very long. And you read every one of them. Yes, I did. Twice. All right. Now, we then jump. We don't have interviewing pages, but we then jump to page 192, where the witness testifies, and I assume this is where you are arguing there's a credibility issue, that is that the witness is judging credibility. She says, I don't believe these have false information. Is that what you were referring to? I believe it is, and I apologize. There's no objection to it. It's elicited, in fact, by cross-examination, and counsel doesn't move to strike. He simply says, I'm not asking that. Okay. If I might note, Your Honor, that was a very small part of our argument. I've been asking you to show us where in the record this appears. I've just shown you where I thought it appeared. I understand. What else is there? Well, I can't point the court to anything, so for my purposes here before the court today, there's nothing else there. I would note a couple of things, and that is this. We were denied the right to present the testimony of examining physicians at the hospital when they began examination within a half an hour of Mr. Markavich's arrival at the hospital. Their testimony, of course not disposed, but it was relevant, had quoted value for our claim. The facts in this case were sharply contested, sharply contested. These doctors said no psychosis, he appears calm, no basis for a 302. Within minutes, almost, of descriptions by Mr. Bigbend and others of Michael swinging wildly between catatonic and- Minutes isn't accurate, is it? Pardon? Minutes is not accurate. How much time ensued? Well, he arrived at the hospital at 12. What time was he- wasn't it 10 o'clock at the time he was in Mr. Bergman's office? Well, they said- you got there at 10, that's correct. Okay, so a couple of hours had ensued from the time of the conduct which led to the reference for the review and the actual doctors seeing him. I was referring to the latter part of his time in the office because the testimony seemed to suggest that during this entire period, it apparently took about 20 minutes to get to the hospital from Mr. Bigbender's office. And so during that period, there were descriptions of him going- so you're right, it did begin two hours earlier, but it did, according to their testimony, continue four hours after that. The other major issues in this were, assuming the propriety of the admission of Dr. Rosenstein's testimony, we were denied the opportunity to examine her on the basis of her opinion. In her opinion, in her expert report, she set out that she relied on and examined or reviewed the reports of both Dr. Villalooz and Dr. King. And that formed part of her judgment in reaching the opinion that she did. We were denied the opportunity to cross-examine her on those reports because of the prior ruling that both their testimony and their reports were not relevant, according to the lower court judge. Those could have had a profound impact, evidentiary-wise, with respect to supporting our claim, making it possibly our position more likely than not without that evidence. Certainly, that would have been large. Is Mr. Tucker correct that with respect to any of these trial errors, all you have really done is argue or suggest trial error, not error that was motivated on a racial basis? Yes and no. That's a rather unsatisfactory answer. I understand that. In this context, Your Honor, the 455A, according to the case law, I think it's the case law on this circuit. I want to know what you argued. I'm not asking you what the statute says. I want to know what your argument is. My argument is this, Your Honor. My argument is that because of the appearance of partiality, the reasonable observer would look at the comments made by Judge Tucker in her response and then would look at these rulings and would formulate a judgment that says there was bias involved here. That's what the statute requires us to present to the court, and we did. Judge Dowd, do you have further questions of counsel? No, I do not. Thank you. Thank you. Thank you, counsel. We will take the matter under advice. Thank you for your arguments.